IN THE UNITED STATES EDISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAMELA WOMACK d/b/a
PJW ENTERPRISES

Plaintiff,

vs.

BRADY MCCASLAND, INC.

Defendant.

---------------------------------------------     Case Number: 15-638-DRH-RJD

BRADY MCCASLAND, INC.,

Counter-Claimant,

vs.

JAMES WOMACK, JORDAN WOMACK,
and ALAN JOHNSON,

Counter-Defendants.

## MEMORANDUM and ORDER

HERNDON, District Judge:

### I. Introduction

Now before the Court is Counter-Defendant Alan Johnson's Motion to Dismiss Counts IV-VIII of Defendant/Counter-Claimant's Second Amended Complaint pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Doc. 58).[1] Defendant/Counter-Claimant, Brady McCasland, Inc. (hereinafter "BMI"), opposes

---

[1] On June 8, 2017, the parties filed a stipulation of dismissal as to certain claims (Doc. 88). However, Counter-Claimant Brady McCasland, Inc.'s claims against Counter-Defendant Alan Johnson remain pending.

the motion on grounds that the pleading requirements of 12(b)(6) are satisfied and Counter-Defendant has adequate notice of Defendant/Counter-Claimant's claims (Doc. 70). For the reasons explained below, the Court **DENIES** Counter-Defendant's Motion to Dismiss (Doc. 58).

## II. Background

On June 8, 2015, BMI removed this case from the Circuit Court of St. Clair County, Illinois, based on diversity jurisdiction under 28 U.S.C. §§ 1332 and 1341 (Doc. 1). Upon removal, defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim (Doc. 7). Thereafter, Plaintiff sought leave to file her First Amended Complaint (Doc. 9). The Court granted the request, and on July 16, 2015, Womack d/b/a PJW Enterprises, filed a three count amended complaint (Doc. 13). On August 13, 2015, BMI filed a Motion to Dismiss the First Amended Complaint (Doc. 21). On March 22, 2016, this Court entered an Order denying BMI's Motion to Dismiss (Doc. 34). BMI then filed its Answer, Affirmative Defenses, and Counterclaim (Doc. 35).

On July 1, 2016, BMI filed a Motion for Leave to File a Second Amended Counterclaim and Motion for Joinder of a Third Party (Doc. 46). On July 21, 2016, BMI filed a nine (9) count Second Amended Complaint against Counter-Defendants James Womack, Jordan Womack, and Alan Johnson (hereinafter referred to as Johnson) (Doc. 48). Counts IV, V, VI, VII, and VIII are directed at Johnson and allege the following under Illinois law: fraud (Count IV), conspiracy

to commit fraud (Count V), aiding and abetting fraud (Count VI), breach of fiduciary duty (VII) and conspiracy to breach fiduciary duty (VIII).

### III. <u>Motion to Dismiss</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that in order to withstand Rule 12(b)(6) dismissal, a complaint "does not need detailed factual allegations," but must contain "enough facts to state a claim for relief that is plausible on its face." 550 U.S. at 570.

*Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) retooled federal pleading standards, but notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted). In making this assessment, the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007).

Despite the established standard discussed above, Federal Rule of Civil Procedure 9(b) articulates the following heightened standard for fraud or mistake and conditions of mind: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Seventh Circuit has held that in order to survive dismissal on a Rule 12(b)(6) motion, the complaint "must plead the 'who, what, when, where, and how' of the alleged fraud." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990); *Lachmund v. ADM Investor Services, Inc.,* 191 F.3d 777, 782 (7th Cir. 1999) (quoting *Uni\* Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992)); *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (citing *DiLeo,* 901 F.2d at 627). As such, "circumstances of fraud or mistake" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology,* 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)).

Additionally, claims that are not by definition claims of fraud, but which "sound[] in fraud," i.e. are "premised upon a course of fraudulent conduct," still warrant the Rule 9(b) heightened pleading standard. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang,* 355

F.3d 164, 170-71 (2d Cir. 2004)); *See* also *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Whether the rule applies will depend on the plaintiffs' factual allegations. *Id.* (citing *In re Daou Sys., Inc.,* 411 F.3d 1006, 1027-28 (9th Cir. 2005) and *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 160-61 (3d Cir. 2004)). Each of the challenged claims at issue here are based upon the same alleged acts of fraud. Therefore, Rule 9(b) applies to Count IV, as well as Counts V-VIII. The pleadings must be specific enough to put fraud defendants on notice of the conduct alleged. *Freedom Mortg. Corp v. Burnham Mortg., Inc.*, 720 F.Supp.2d 978, 989 (N.D. Ill. 2010). With this heightened standard in mind, the Court turns to Counts IV-VIII of BMI's Second Amended Complaint, as applied to Counter-Defendant Alan Johnson.

## IV. Analysis

### a. Count IV: Fraud

First, Johnson argues that Count IV of BMI's counterclaim is "comprised of legal conclusions and conclusory statements" and is not pled with "the specificity required under the law" because of the following: (1) the specific date of when the under loading occurred is not stated; (2) only Johnson's length of employment at BMI is claimed to give rise to "special confidence"; (3) concerted action is claimed without any "details [of] how they acted in concert"; and (4) there is nothing demonstrating how BMI determined the cars were under loaded, what benefit Johnson realized, or what actions were taken to conceal the "Scheme." Doc. 59, Pg. 4-5. Furthermore, Johnson identifies as conclusory BMI's allegations that

Johnson "knowingly and voluntarily encourage[d], facilitated, and participated in the Scheme in concert with the Womacks, concealed the scheme from the Womacks and realized a material benefit as a result of the scheme," and "intentionally made such false representations… with the intention that BMI rely… because he stood to realize a material benefit as a result of the scheme." Doc. 59, Pg. 4.

BMI counters by arguing the facts related to the supposed legal conclusions and conclusory statements identified by Johnson are not "necessary to state a claim for fraud…." Doc. 70, Pg. 7. A claim for fraud must include (1) a false statement of material fact, (2) defendant's knowledge that the statement was false, (3) defendant's intent that the statement induce plaintiff to act, (4) Plaintiff's reliance upon the truth of the statement, and (5) plaintiff's damages resulting from reliance on the statement. *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). BMI relies on the "who, what, when, where, and how" standard required by the Seventh Circuit to satisfy Fed. R. Civ. P. 9(b). This standard, in turn, sufficiently pleads the elements of stated above. Specifically, BMI identifies the "who" as Johnson; the "what" as false and material representations to BMI about the authorization of payments and the Womacks satisfying their obligations under the Agreement, despite substantially less than fully loaded railcars of Iron; the "when" as ongoing false and material representations from 2005 to 2014; the "where" as the BMI Plant; and the "how" as the detrimental reliance, as a result of Johnson being a

Plant Manager and twenty-five year employee, created by the intentional making of false and material representations that led to BMI paying for millions of pounds of Iron it did not receive. (Doc. 48).

Construing the facts in a light most favorable to BMI, and considering the heightened standard of Fed. R. Civ. P. 9(b), Count IV of the Second Amended Complaint makes out a plausible claim to relief for fraud and gives Johnson fair notice of the allegations being made against him. The specific dates when the under loading occurred are not needed at the pleading stage because of the ongoing and repeated misrepresentations that allegedly occurred over a period of nine years. "Where the fraudulent scheme occurred over a period of time, the requirements of Rule 9(b) may be less stringently applied." *PharMerica Chicago, Inc.*, 772 F.Supp.2d at 955 (citing *SEC v. Benger,* 697 F.Supp.2d 932, 937-38 (N.D. Ill. 2010)). Further, although specific dates of under loading are not given, BMI pled the cumulative shortage of Iron and the equivalent number of railcars for the period 2005-2014. These numbers give an indication of the frequency of the alleged misrepresentations by Johnson and raise questions of fact not appropriate for dismissal on a motion to dismiss.

Likewise, a plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. *See Mason v. Medline Industries, Inc.*, 731 F.Supp.2d 730, 735 (N.D. Ill. 2010) (finding that Rule 9(b) was satisfied because the plaintiff outlined the fraud

scheme and provided "concrete examples," identifying the individuals and businesses involved, the relevant time frames, and the manner in which the fraud occurred). BMI met this standard by confining its claims to the particular elements of fraud under Illinois law and Fed. R. Civ. P. 9(b). It identified the Womacks and Johnson as the individuals involved, continually and repeatedly from 2005-2014 as the relevant time frame, and misrepresentations regarding the authorization of payments and satisfying of obligations by the Womacks, even though the railcars were allegedly substantially less than fully loaded, as the manner in which the fraud occurred.

Furthermore, the allegations related to encouraging, facilitating, and participating in the "Scheme," as well as concealing and intentionally making false representations to realize a material benefit from the "Scheme," in concert with the Womacks, speak to conditions of mind and, therefore, are not conclusory because they can be alleged generally under Fed. R. Civ. P. 9(b). *Tricontinental Industries, Ltd*, 475 F.3d at 833.

### b. <u>Count V: Conspiracy to Commit Fraud</u>

Second, Johnson cites both Illinois and Federal procedural law for the two following propositions: (1) the complaint "must contain more than the conclusion that there was a conspiracy, [as] it must allege specific facts from which the existence of a conspiracy may properly be inferred," and (2) a plaintiff "must include facts tending to show an agreement among the defendants to commit a tortious or unlawful act." Doc. 59, Pg. 6 (citing *Adcock v. Brakegate, Ltd.*, 645

N.E.2d 888, 895 (1994) and *Reiser v. Residential Funding Corp.,* 420 F.Supp.2d 940, 948 (S.D. Ill. 2004)). Johnson further cites *Reiser* in arguing that the claim for conspiracy to defraud fails as a matter of law because the "failure to plead properly an independent cause of action on which the conspiracy is allegedly based requires dismissal of the conspiracy." (Doc. 59, Pg. 6); *Reiser,* 420 F.Supp.2d at 948.

BMI responds by first arguing, correctly, that Federal procedural law governs the issue before the Court. (Doc. 70, Pg. 3). To the extent that *Adcock* conflicts with those Federal procedural laws, it will not be followed. Furthermore, BMI argues that the liberal Federal notice pleading standards apply and are met because of BMI's general allegations incorporated into Count V, coupled with the allegations specific to Count V, and the allegations specific to Count IV for fraud. (Doc. 70, Pg. 3). According to BMI, these facts show "an agreement among Johnson and the Womacks to carry out their fraudulent Scheme," as "Johnson was exclusively responsible for overseeing the Womack's work pursuant to the Agreement, including reviewing and authorizing the payment of the Womacks' invoices…." (*Id.* at 3-4). Additionally, BMI alleges the following: it "paid invoices based on Johnson's confirmation that… each railcar… was full of Iron"; "Johnson represented… the Womacks were satisfying their obligations under the Agreement and he consistently approved the Womacks' invoices on this purported basis"; and "Johnson knowingly and voluntarily encouraged, facilitated and participated

in the Scheme in concert with the Womacks, concealed such Scheme from BMI, and realized a material benefit as a result…." (Doc. 70, Pg. 4).

As an initial matter, Johnson's argument that the claim for conspiracy to defraud fails as a matter of law need not be address further because the Court found that the fraud claim articulated in Count IV is sufficiently pled. Next, the "who, what, when, where, and how" test articulated by the Seventh Circuit is met. To succeed on a conspiracy claim under Illinois law, BMI must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino*, 477 F.3d at 509; See also *Dames & Moore v. Baxter Woodman, Inc.*, 21 F.Supp.2d 817, 824 (N.D. Ill. 1998), *Freedom Mortg. Corp*, 720 F.Supp.2d at 999, and *PharMerica Chicago, Inc.*, 772 F.Supp.2d at 962.

Here, again construing the facts in a light most favorable to BMI and considering the heightened standard of Fed. R. Civ. P. 9(b), Count V of the Second Amended Complaint makes out a plausible claim to relief for conspiracy to commit fraud and gives Johnson fair notice of the allegations being made against him. BMI pleaded facts showing Johnson and the Womacks were the "who," as they allegedly agreed to carry out a fraudulent "Scheme." It then alleged the "what" by claiming Johnson used his position as Plant Manager to aid in charging BMI for millions of pounds of Iron it did not receive. The "when" and "where" are

incorporated from the general allegations that the "Scheme" occurred continually and repeatedly from 2005-2014 at the BMI plant, respectively. Finally, the "how" is alleged by claiming Johnson encouraged, facilitated, and participated in the "Scheme" to realize a material benefit in the way that he oversaw the Womacks' work and authorized the payment of invoices by BMI after deeming their obligations under the Agreement satisfied. Thus, BMI pleaded with particularity facts showing an agreement between Johnson and BMI that was made to accomplish an unlawful purpose, as well as tortious acts in the form of misrepresentations about the Agreement, which were in furtherance of the injury-causing "Scheme."

### c. Count VI: Aiding and Abetting

Third, Johnson again argues that BMI alleges only conclusory statements in its claim for aiding and abetting fraud, and that said claim fails as a matter of law because of the assertion that Count IV was insufficiently pled. Specifically, Johnson states "BMI does not allege how Johnson provided aid, assistance, and encouragement to BMI or how he was aware of the role in doing so." Doc. 59, Pg. 7. BMI answers by stating that specific facts are not necessary, but that it nevertheless did allege sufficient facts to show the manner in which Johnson provided aid, assistance, and encouragement to the Womacks in carrying out their fraud. Doc. 59, Pg. 7.

As was the case under Count V, there is no need to discuss Johnson's argument involving the aiding and abetting claim failing as a result of the

underlying fraud claim being insufficiently pled. The Court has found that fraud was sufficiently pled in this case. Furthermore, sufficient factual matter was pled for the aiding and abetting claim, as the "who, what, when, where, how" test is met. To state a claim for aiding and abetting under Illinois law, one must allege (1) the party whom the defendant aids performed a wrongful act causing injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *See* also *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003) and *LoggerHead Tools, LLC v. Sears Holding Corporation*, 19 F.Supp.3d 775, 784-85 (N.D. Ill. 2013).

In light of the above considerations, it is apparent that Count VI of the Second Amended Complaint makes out a plausible claim to relief for aiding and abetting fraud and gives Johnson fair notice of the allegations being made against him. BMI alleged in its complaint that Johnson was the "who." The "what" were his representations that the Womacks were satisfying their obligations under the Agreement and his approval of the Womacks' invoices on this purported basis, thereby leading BMI to the "how" of relying on Johnson's representations and the representations contained in the invoices when paying the alleged overcharges. Furthermore, the "when" and "where" remain continually and repeatedly from 2005-2014 at the BMI plant. These facts allow for reasonable inferences with regard to Johnson's aid, assistance, and encouragement of the "Scheme." Lastly, it is of no consequence, contrary to the arguments of Johnson, that it was not

alleged how Johnson was aware of his role in aiding, assisting, and encouraging the "Scheme." This question speaks to conditions of mind and, therefore, can be alleged generally under Fed. R. Civ. P. 9(b). *Tricontinental Industries, Ltd*, 475 F.3d at 833.

### d. Count VII: Breach of Fiduciary Duty

Fourth, Johnson argues that the elements for stating a claim for a breach of fiduciary duty under Illinois law are insufficiently alleged. To properly state a claim, a plaintiff must allege a fiduciary duty: (1) exists, (2) was breached, and (3) such breach proximately caused the injury of which the plaintiff complains. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). The first prong of this test is met when "there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence." *Id.* (citing *Hensler v. Busey Bank,* 596 N.E.2d 1269, 1274 (Ill. App. Ct. 1992). This includes the employee of an employer, as "an agent owes fiduciary duties to his principal as a matter of law." *DeLeon v. Beneficial Const. Co.*, 55 F.Supp.2d 819, 827 (N.D. Ill. 1999); *See* also *Freedom Mortg. Corp., Inc.*, 720 F.Supp.2d at 997.

Specifically, Johnson argues that the length of time he was an employee of BMI, without more, does not establish a "special confidence" for a fiduciary relationship to exist. He argues that this allegation is a conclusory statement because BMI "fails to present any allegations… that demonstrate anything to

support a special confidence, how Johnson breached the confidence, or how he acted in any manner contrary to the interests of his employer." (Doc. 59, pg. 8). BMI counters by asserting that Johnson contradicts his above argument by stating "it is well settled under Illinois law that an employee owes a duty of fidelity and loyalty to his employer." (Doc. 59, pg. 8); (Doc. 70, pg. 5). BMI claims it is being a longtime employee that in fact gives rise to the "duty of loyalty to the company." (Doc. 70).

Count VII of the Second Amended Complaint makes out a plausible claim to relief for a breach of fiduciary duty and gives Johnson fair notice of the allegations being made against him. BMI has alleged that a fiduciary duty exists as a result of again identifying Johnson as the "who." The "what" is Johnson's longtime employment and the "utmost trust and confidence, which garnered him influence and considerable control and responsibility" that accumulated from that employment. As stated above, a fiduciary duty exists between agent and principal, employer and employee. Furthermore, BMI sufficiently alleges a breach of that fiduciary duty and an injury as the "how," which as have been discussed extensively above, occurred after Johnson's alleged participation in the "Scheme" and his responsibility of authorizing invoices and making sure the Womacks satisfied their duties. The "when" and "where" remain continually and repeatedly from 2005-2014 at the BMI plant.

### e. Count VIII: Conspiracy to Breach Fiduciary Duty

Fifth, Johnson restates the elements for civil conspiracy, as discussed above, and cites Illinois law to allege that the complaint "must contain more than the conclusion that there was a conspiracy,[as] it must allege specific facts from which the existence of a conspiracy may properly be inferred." (Doc. 59) (citing *Adcock*, 645 N.E.2d 888, 895 (1994)). Further, Johnson alleges BMI "must include facts tending to show an agreement among the defendants to commit a tortious or unlawful act" and that, again, civil conspiracy "is not an independent tort, and failure to plead properly an independent cause of action on which the conspiracy is allegedly based requires dismissal of the conspiracy claim." *Id.* (citing *Reiser,* 420 F.Supp.2d at 948). BMI counters by stating that the liberal Federal notice pleading standard, as stated in Federal Rule of Civil Procedure 8(a), applies and requires no more than notice to the defendant of the claim.

Count VIII of the Second Amended Complaint makes out a plausible claim to relief for conspiracy to breach fiduciary duty and gives Johnson fair notice of the allegations being made against him. The "who, what, when, where, how" test is met. BMI claims the "who" were the Womacks and Johnson and the "what" was their agreement "that in furtherance of their Scheme, Johnson would act in breach of his fiduciary duty to BMI…." (Doc. 48, Pg. 11). Specifically, it is alleged Johnson agreed to carry out the fraudulent "Scheme" with the Womacks by using his position as Plant Manager, which included the exclusive responsibility to oversee the Womacks' work and authorize the payment of invoices by BMI after deeming the obligations under the Agreement satisfied, to aid in charging BMI for

millions of pounds of Iron it did not receive. (Doc. 48). This constitutes the "how" because it is argued that through these factual allegations of concerted action, Johnson "did knowingly and voluntarily commit a breach of his fiduciary duty to BMI," which can be alleged generally. (*Id.*); Fed. R. Civ. P. 9(b); *Tricontinental Industries, Ltd*, 475 F.3d at 833. In sum, it was sufficiently alleged that there was concerted action by an unlawful purpose, in the furtherance of which an overt tortious or unlawful act was committed between two or more persons.

### f. **Statute of Limitations**

Lastly, Johnson cites the Seventh Circuit and Illinois law for the proposition that claims for fraud, conspiracy to defraud, aiding and abetting fraud, breach of fiduciary duty, and conspiracy to breach fiduciary duty must be brought within five years. (Doc. 59) (citing *Joyce v, Morgan & Co.*, 538 F.3d 797, 803 (7th Cir. 2008); 735 ILCS § 5/13-205; *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013); and *Clark v. Robert W. Baird Co.,* 142 F.Supp.2d 1065, 1074-75 (N.D. Ill. 2001)). He states that "BMI alleges the Womacks violated the terms of the oral agreement by under loading the railcars for years and that the Womacks had under loaded the equivalent of 314 railcars," but that BMI "fails to allege… the date that the under loading occurred." (Doc. 59). Thus, Johnson claims any railcars under loaded prior to July 21, 2011, should be barred and/or dismissed with prejudice due to the statute of limitations having elapsed. *Id.*

BMI counters by arguing the three following points: (1) a complaint need not plead facts necessary to overcome a statute of limitations defense; (2) the

applicable statute of limitations did not begin running on the date of the occurrence, but rather on the date BMI became aware of its claim; and (3) BMI pleaded facts demonstrating its ability to defeat a statute of limitations defense, even though it is not necessary to avoid dismissal. (Doc. 70).

It is improper to dismiss BMI's complaint for timeliness at this stage in the case. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney v. Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). This is because "these defenses typically turn on facts not before the court at that stage in the proceedings." *Id.* (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). However, "if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground," but this "irregularity" is appropriate only where the complaint sets out everything necessary for the affirmative defense. *Id.* (citing *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) and *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)). As long as there are conceivable facts that would defeat a statute of limitations defense, questions of timeliness are left for summary judgment where a more complete factual record exists. *Id.*

Generally, a cause of action "accrues" when facts exist that authorize the bringing of a cause of action, i.e. when all the elements for establishing the duty, breach, and injury are present. *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012) (citing *Brucker v. Mercola*, 886 N.E.2d 306, 329 (Ill. 2007)). However, a "mechanical application" of this rule could result in the limitations period expiring before a plaintiff knows of his or her cause of action. *Id.* Thus, the Supreme Court of Illinois adopted the "discovery rule," which states that the limitations period is postponed until the injured party knows or reasonably should know of the injury and that it was wrongfully caused. *Id.* at 1028-29 (citing *Witherell v. Wiemer,* 421 N.E.2d 869, 874 (Ill. 1981) and *Nolan v. Johns-Manville Asbestos,* 421 N.E.2d 864, 868 (Ill. 1981). Further, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. *Belleville Toyota v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002).

Here, BMI has stated that the wrongful conduct occurred from 2005 until its discovery in 2014. Specifically, it has alleged that the conduct began in 2005, continued or repeated up until 2014, at which time it was discovered by BMI. Thus, there is a question of when the last injury occurred or the tortious acts ceased. Upon considering the extensive allegations discussed at length above, it is clear that the absence of necessary facts prevent a determination of timeliness at this stage. There are, however, enough facts to defeat a statute of limitations

challenge. Therefore, the need for a complete factual record makes summary judgment proper for timeliness determinations.

## V. Conclusion

Accordingly, the court **DENIES** Counter-Defendant Alan Johnson's motion to dismiss (Doc. 58).

**IT IS SO ORDERED.**

**Signed this 29th day of June, 2017.**

Digitally signed by Judge David R. Herndon
Date: 2017.06.29 13:50:07 -05'00'

**United States District Judge**